**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

MICHAEL A. DEMUTH,

                                      Plaintiff,

       v.

CHENANGO COUNTY SHERIFF'S OFFICE, et al.,

                                  Defendants.

No. 9:18-CV-795
(GTS/CFH)

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

**APPEARANCES:**                             **OF COUNSEL:**

Michael A. Demuth
19-B-1439
Collins Correctional Facility
P.O. Box 340
Collins, New York 14034
Plaintiff pro se

Office of Frank W. Miller                 FRANK W. MILLER, ESQ.
6575 Kirkville Road
East Syracuse, New York 13057
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

      Plaintiff pro se Michael A. Demuth ("plaintiff"), an inmate who was, at all

times relevant to the present matter, a pretrial detainee[2] in the custody of the

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] Although the Court in its Order on initial review of the complaint noted that it was unclear whether plaintiff was incarcerated at Chenango County Correctional Facility ("CCCF") following a conviction or as a pretrial detainee, see Dkt. No. 13 at 4, defendants have established that, at all times relevant to the

Chenango County Correctional Facility ("CCCF"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants County of Chenango[3]; Sheriff of the County of Chenango, Ernest Cutting ("Cutting"); and CCCF Administrator, Lieutenant Chris Miles, Sr. ("Miles"), violated his constitutional rights.  See Dkt. No. 1 ("Compl.").  Presently pending before the Court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  See Dkt. No. 32.  Plaintiff did not file a response.  For the reasons that follow, it is recommended that defendants' motion be granted in its entirety and plaintiff's complaint be dismissed.

## I. Background

The facts are reviewed in the light most favorable to plaintiff as the non-moving party.  See subsection II.A., infra.  At all relevant times, plaintiff was a pre-trial detainee at CCCF.  See Dkt. No. 32-2 at 1 ¶ 2; Dkt. No. 32-4 at 5; Dkt. No. 32-9 at 2 ¶ 5.

### A. Facts[4]

---

allegations in the complaint, plaintiff was confined at CCCF as a pretrial detainee.  See Dkt. No. 32-2 at 1 ¶ 2; Dkt. No. 32-4 at 5; Dkt. No. 32-9 at 2 ¶ 5.

[3]  In its October 2018 Order on initial review of the complaint, the Court substituted the County of Chenango as a defendant in this action in place of the Chenango County's Sheriff's Office and directed the Clerk of the Court to terminate the Chenango County Sheriff's Office from the docket.  See Dkt. No. 13 at 8.  The Clerk of the Court is, therefore, respectfully directed to modify the caption accordingly.

[4]  In support of their motion for summary judgment, defendants filed a Statement of Material Facts in compliance with N.D.N.Y.L.R. 7.1(a)(3).  See Dkt. No. 32-2.  Defendants also filed and served a document titled "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion," which states, "WARNING: If you do not submit a proper response to the defendants' statement of material facts, **the Court may deem you to have admitted the defendants' factual statements**."

Attorney-client meetings occur in one of three areas within the CCCF visitation room, which is located in the basement of the facility.  <u>See</u> Dkt. No. 32-2 at ¶ 5.  Defendants proffer the affidavit of defendant Miles, a lieutenant with the Chenango County Sheriff's Office and the CCCF administrator, to explain the general layout of the CCCF visitation room and the facility's policies for attorney-client and inmate-inmate meetings.  <u>See</u> Dkt. No. 32-9 at 2-4.  Miles explains that "[a]ttorney-client visits occur in the [CCCF] visitation room," which is "located on the [first] floor of the facility," is "approximately 44' x 45,'" and contains three separate areas.  Dkt. No. 32-9 at ¶ 8.  One area of the CCCF visitation room is the parole hearing room, which is "approximately 12' x 18,'" and is "composed of [two] concrete masonry block [walls] and Plexiglas windows."  <u>Id.</u> at ¶ 10.  Another area of the CCCF visitation room is "[t]he main visitation area[, which] is 5' x 7,' and "consists of 20 chairs arranged in a u-shape."  <u>Id.</u> at 3 ¶ 10.  When attorney-inmate meetings are held in the main visitation area, "the inmate enter[s] from the top of the 'u' through a locked door off one of the . . . hallways."  <u>Id.</u>  The main visitation area "is the only location where commingling with other individuals occurs."  <u>Id.</u>  A third area of the CCCF visitation area is the "non-contact room,"

---

Dkt. No. 32-1 at 1.  In addition, defendants expressly advised plaintiff of the consequences of failing to file a proper response to the motion.  <u>See id.</u> ("If you do not file a proper response to this motion, the Court may grant the motion **and dismiss some or all of your claims**.").  Plaintiff did not file a response to defendants' motion despite the Court granting plaintiff two time extensions in which to do so.  <u>See</u> Dkt. Nos. 37, 39.  Therefore, notwithstanding plaintiff's <u>pro se</u> status, the Court will "follow the practice of enforcing [N.D.N.Y.]L.R. 7.1(a)(3) and accept the facts set forth in [d]efendant['s] Material Statement of Facts as uncontroverted to the extent those facts are supported by record evidence."  <u>Richard v. LeClaire,</u> 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at *4 (N.D.N.Y. May 6, 2019).

which "consists of a series of [6 non-contact] booth[s] with concrete masonry partitions between the[m] and with the inmate and the attorney separated by Plexiglas." Id. at ¶¶ 10, 12.

Miles explains that "[t]he general practice i[s] for attorney[-]client visits to occur in the Parole Hearing Room with the door closed and with an officer posted to sit outside the room." Dkt. No. 32-9 at 2 ¶ 9. However, he states that, "[a]t the request of an attorney, an attorney may meet with their client in a non-contact room." Id. at 3 ¶ 12. Regardless of whether an attorney-client meeting takes place in the parole hearing room or in the non-contact room, "an [o]fficer is positioned in the hallway to visually monitor the meeting." Id. In addition, an attorney may request to conduct an attorney-client meeting in the main visitation area at the u-shaped table. See id. at ¶ 13. If the attorney selects this last option, "[t]he inmate enters from a locked door and the attorney would generally sit across from the inmate." Id. Miles states that attorney-client "visits generally do not occur in either the main visitation area or the non-contact area with other person[s] in the room." Id. at ¶ 14. Moreover, Miles observes that "[p]rivate conversations occur out of ear shot of the officer unless the attorney specifically requests that the visit occur in the non-contact area of the visitation room," in which case "the attorney has made a choice knowing the circumstances and knowing that an officer is nearby." Id. at ¶ 18. "In addition to attorney[-]client visits and visits with family members, an inmate is permitted to meet with another inmate to discuss and prepare legal matters." Dkt. No. 32-2 at 3 ¶ 11; see Dkt.

4

No. 32-9 at 4 ¶ 15.  These inmate-to-inmate meetings are "classified" as "mutual inmate legal assistance," and "may also occur at the visitation room."  Dkt. No. 32-9 at 4 ¶ 17.[5]

Concerning CCCF's policies for attorney-client and mutual inmate legal assistance meetings, defendants provide a copy of the 2018 Inmate Handbook.  See Dkt. No. 32-6 at 30-31.  As relevant here, the 2018 Inmate Handbook provides guidelines concerning the use of facility phones to hire and communicate with legal counsel, and for unsentenced prisoners to seek representation from public defenders.  See id. at 30-31.  Further, the Inmate Handbook states that inmates are permitted to meet with each other for mutual inmate legal assistance upon approval of the shift supervisor.  See id. at 31.  Inmates wishing to engage in the exchange of legal materials during a mutual inmate legal assistance meeting must sign a written consent authorizing the exchange of such materials and CCCF officers will inspect those materials to ensure that they are, in fact, legal in nature.  See id.  Moreover, the CCCF Inmate Handbook makes clear that "[m]utual inmate legal assistance meeting[s] will be supervised by an officer."  Id.

Further, defendants proffer CCCF's records, which indicate that plaintiff had five visits with an attorney, the first of which occurred on July 12, 2018—after plaintiff filed the present lawsuit on July 6, 2018, and that plaintiff did not request

---

[5]  Paragraph 17 of Mile's affidavit is incorrectly numbered 15.  See Dkt. No. 32-9 at 4.

any mutual inmate legal assistance meetings.  See Dkt. No. 32-11 at 2-4; Dkt.

No. 32-9 at ¶ 14.  Defendants also state that "[p]laintiff did not file a grievance

with [CCCF] during the period June 1, 2018[,] through September 30, 2018[,]

relating to any claims asserted in his" prior lawsuit, Demuth v. Hand, and "did not

file any grievances with respect to the matters raised in the [c]omplaint prior to

June 30, 2018."  Dkt. No. 32-2 at 2 ¶ 3, 4 ¶ 15.  Defendants submit the affidavit of

Christopher LaCotta ("LaCotta"), the grievance officer at the Chenango County

Sheriff's Office, whose "duties include records, logging, processing, and keeping

grievances filed by inmates at [CCCF]."  Dkt. No. 32-5 at 1 ¶ 2.  LaCotta states

that, "[d]uring the months of June through October 2018, [p]laintiff had five

attorney visits," the first of which "occurred on July 12, 2018."  Id. at 2 ¶ 9.

Attached as an exhibit to LaCotta's affidavit is CCCF's facility records, which

contain a log of plaintiff's attorney meetings that demonstrate that plaintiff had

attorney-client meetings on July 12, 2018; July 25, 2018; August 6, 2018;

September 26, 2018; and October 11, 2018.  See Dkt. No. 32-11 at 2-4.

Concerning CCCF's grievance procedure, LaCotta explains that, "[w]hen

an inmate enters [CCCF], . . . he is provided with a copy of the Inmate Rule

Book," which "describes the Inmate Complaint Procedures at pages 20-22."  Id.

at 1 ¶ 3, 2 ¶ 4; see Dkt. No. 32-6 at 26-28 (CCCF Inmate Hand Book containing

the facility's seven-step inmate complaint process).  LaCotta states that, in

relation to plaintiff's prior lawsuit, Demuth v. Hand, he "conducted a search of the

grievances [p]laintiff filed with [CCCF] during the period of June 1, 2018[,]

through September 30, 2018[,]" and "did not locate any grievances filed by [p]laintiff relating to any claims asserted in his" prior lawsuit. Id. at 2 ¶ 6. Moreover, LaCotta states that plaintiff "did not request any [mutual inmate legal assistance meetings] prior to July 12, 2018." Id. at 3 ¶ 11. Defendants also submit a portion of plaintiff's deposition testimony in which defense counsel inquired whether plaintiff had "file[d] any grievances related to" his present claims. Dkt. No. 32-4 at 7.[6] In response, plaintiff testified, "I don't believe I did. I'm not sure. Like I said, at the time that I filed a lot of these cases, I filed numerous grievances, so I'm not sure which ones were actually sent out or taken care of or done or whatever." Id. at 7-8.

At deposition, in response to defense counsel's inquiry as to whether plaintiff "visit[ed] anybody" "[i]n June 2018," plaintiff stated that he "came down to address an issue with [his] attorney," but could not provide an exact date. Dkt. No. 32-4 at 2. With respect to the purported June 2018 meeting, plaintiff testified that he and another inmate, David Johnson ("Johnson"), met with "the same attorney" "in the administrative segregation room." Id. at 3, 8.[7] Plaintiff explained that he and Johnson "were on the inmate side" of the administrative segregation booths, while "[t]he attorney was on the visitor's side," and that a guard was

---

[6] Defendants have proffered 10 pages of the 22-page deposition transcript. See generally Dkt. No. 32-4.

[7] In referring to the "administrative segregation room," Dkt. No. 32-4 at 3, plaintiff appears to referencing the non-contact room that contains the six non-contact booths, as the complaint makes specific reference to the "administrative segregation booths," which plaintiff complains are not soundproof. Compl. at 2. Further, at one point in his affidavit, Miles specifically describes the portion of the visitation area that houses the non-contact booths as the "non-contact room." Dkt. No. 32-9 at 3 ¶¶ 10, 12.

"[s]tanding outside in the hallway." Id. at 3.  Plaintiff testified that Johnson

overheard his conversation with the attorney and that he overheard Johnson's

conversation.  See id. at 5, 6.

Plaintiff further testified that someone in the administrative segregation

room could hear a conversation inside the room "[j]ust by walking by" because

"[i]t's not soundproof."  Dkt. No. 32-4 at 6.  Plaintiff stated that he had not had an

attorney-client meeting in the general visitation area, where "members of the

public" meet with detainees.  Id.  He also testified that, when meetings occur in

the visitation area, "[t]hey [have] us sitting in [the parole hearing room][8] and a

guard posted outside of the window."  Id.  When asked whether use of the parole

hearing room with a guard stationed outside is "typically how the attorney

visitation[s] occur[,]" plaintiff responded "[y]es."  Id. at 6, 7.  Plaintiff testified that

he "had visits with attorneys in [the parole hearing room] before"; "[t]wo visits with

an attorney outside of [that] room'" "[a]nd . . . [o]ne with another inmate on [his]

side" of the administrative booths, referring to the purported June 2018 meeting

with the attorney and Johnson.  Id. at 7.  Moreover, in response to defense

counsel's inquiry as to whether "any of [plaintiff's] conversations that [he] claim[s]

may have been overheard resulted in any negative impact on [him,]" plaintiff

responded "[n]o, sir."  Id.  When asked whether there were "[a]ny other areas

where [plaintiff] may have been . . . injured," plaintiff stated "[n]o[, j]ust the fact

---

[8]  Plaintiff's deposition was taken in the CCCF parole hearing room, which plaintiff refers to as the "conference room."  Dkt. No. 32-4 at 6, 7.

that somebody was overhearing the conversation," "someone overhearing [sic] my case matters." Id. at 5, 8, 9.

## B. Plaintiff's Complaint

Plaintiff alleges that he is bringing this action to challenge the policy and practice of CCCF concerning the conditions under which the facility allows inmates to meet with their attorneys and other inmates. See Compl. at 2-3. Plaintiff states that he was first confined at CCCF on April 25, 2018. See id. at 1; Dkt. No. 32-4 at 2. He contends that when inmates meet with an attorney, CCCF "put[s them] in the visitation room, but not inside a conference room[,] but [in] the administrative segregation booths that are located in the hallway of the jail located outside of the pods in direct view of not only the officers but the v[a]rious inmates that are present when walking by or waiting" to meet with their own legal counsel. Compl. at 2. As a result, plaintiff posits, inmates meeting with their legal counsel "are subjected to being seen by inmates [and] officers" and, because "the[] booths [are] not . . . sound proof and there being [P]lex[iglass] separating [them] and the attorneys[,] the many officers that happen to walk by at any given time can hear what . . . inmates are saying to [their] attorneys." Id.

Plaintiff further asserts that this policy also allows other inmates to overhear conversations between inmates and attorneys, "putting the inmate with the attorney at a great risk if they hear the[] charges . . . they are being detained for." Id. In addition, plaintiff contends that this type of meeting arrangement also

9

applies "for the inmates that request a legal mut[ua]l[9] with another inmate to discuss or to go over legal aspects of [their] case." Id.  With respect to the inmate-to-inmate legal discussions, plaintiff complains that a correction officer "is present in the room . . . and listens to every word being spoken about the case . . . being addressed." Id. at 1-2.  Plaintiff alleges that the foregoing is "clearly a violat[ion] of the civil rights pertaining to the privacy of [inmate's] legal matters" because a correction officer could "testify[] before the courts as to anything he/she might have seen or he[a]rd while being in the same room or standing outside the booths in the visitation area where everything said can be he[a]rd" by both correctional staff and other inmates.  Id. at 2.  Plaintiff alleges that he "used the inmate grievance policy put forth to address the issue and being [sic] denied at every level along the way." Id. at 1.

### C. Defendants' Memorandum of Law

Defendants raise numerous arguments in their memorandum of law in support of summary judgment, which distill to the following.  Defendants first argue that plaintiff failed to exhaust administrative remedies because he did not file a grievance regarding the alleged conditions under which attorney-client meetings are purportedly conducted at CCCF.  See Dkt. No. 32-13 at 15-17.  Next, defendants contend that plaintiff has failed to establish a Sixth Amendment

---

[9]  Plaintiff testified at deposition that "legal mut[ua]l" is "when two inmates get together and discuss their crimes[,] or discuss aspects of their crimes or case law and things like that," which is permitted by CCCF rules.  Dkt. No. 32-4 at 4.

right to counsel claim because he has not demonstrated that "[d]efendants failed to accommodate [his] communications with his attorney in a private setting[] or somehow rendered any communications with his counsel nonconfidential." Id. at 22.  Further, defendants argue that plaintiff has failed to establish standing to assert a Fourteenth Amendment right of access to the courts claim because he has not alleged any "actual injury" as a result of defendants purported policy.  Id. at 28 (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)).

Defendants also contend that plaintiff cannot established a Fourth Amendment claim because plaintiff did not engage in an attorney-client meetings until July 12, 2018—six days after he filed his complaint—and did not engage in any inmate mutual legal assistance meetings; therefore, defendants aver, "[p]laintiff did not have an actual, subjective expectation of privacy in confidential communications with his attorney or with other inmates when no such communications occurred." Id. at 22-23.  In addition, defendants contend that plaintiff has failed to allege personal involvement.  See id. at 22-23.  Moreover, defendants argue that plaintiff's claims are barred by the doctrine of qualified immunity.  See id. at 32-33.  Finally, defendants contend that plaintiff lacks standing to bring this action because "[p]laintiff does not and cannot point to one conversation that was [e]ver heard prior to the filing of the complaint."  Dkt. No. 32-13 at 34.

## II. Discussion[10]

### A. Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the burden of showing the absence of a genuine dispute of material fact by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. Celotex, 477 U.S. at 322; see FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Id. at 248, 250; see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all

---

[10] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp. (Motors Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985) (per curium)). Furthermore, "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (brackets omitted) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed
Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions
too numerous to count, we have reminded district courts that when [a] plaintiff
proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally."
(internal quotation marks and citations omitted)).

### B. Abandonment of Claims

Despite defendants' express warning of the consequences of failing to
properly respond to the motion for summary judgment, see Dkt. No. 32-1 at 1,
and the Court twice extending plaintiff's time to file a response, see Dkt. Nos. 37,
39, plaintiff did not oppose the motion for summary judgment.  Accordingly, it is
recommended that plaintiff's claims be dismissed as abandoned.  See Maher v.
All. Mortg. Banking Corp., 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009) ("Federal
courts may deem a claim abandoned when a party moves for summary judgment
on one ground and the party opposing summary judgment fails to address the
argument in any way." (internal quotation marks and citations omitted)); see also
Martien v. City of Schenectady, No. 1:04-CV-679 (FJS/RFT), 2006 WL 1555565,
at *2 (N.D.N.Y. June 2, 2006) (deeming abandoned and granting summary
judgment in favor of the defendant as to a claim that the pro se plaintiff did not
address in response to the defendant's motion for summary judgment).
Alternatively, for the reasons set forth in subsections II.D.-E., infra, it is

recommended that plaintiff's claims be dismissed for failure to establish a constitutional violation.

### C. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration.  See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  The exhaustion requirement applies "'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  Cucchiara v. Dumont, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *4 (N.D.N.Y. Apr. 26, 2019) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)); see also Baez v. Parks, No. 02-CV-5821 (PKC/DF), 2004 WL 1052779, at *5 (S.D.N.Y. May 11, 2004) ("[T]he PLRA's strict exhaustion requirement does indeed apply in actions brought by pretrial detainees.").  Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages.  See Porter, 534 U.S. at 524.  "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is

15

incarcerated." Cuadrado v. Brueault, No. 9:14-CV-1293 (DNH/CFH), 2015 WL 1606178, at *3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549 U.S. 199, 218 (2007).

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (internal quotation marks and citation omitted). Previously, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, in Ross v. Blake, the Supreme Court held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, ____ U.S. ____, 136 S. Ct. 1850, 1862 (2016). Thus, the special circumstances exception previously promulgated by the Second Circuit in Hemphill is no longer consistent with the statutory requirements of the PLRA. See Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

However, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, ____ U.S. ____, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an

administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

There is no genuine dispute that, at all relevant times, CCCF had in place a seven-step grievance procedure. See Dkt. No. 32-12 at 26-28. First, the inmate must "attempt to reach a solution with the Corrections Officer assigned" to his housing area. Id. at 27. Second, the inmate may request an informal complaint form. See id. Third, the inmate may request a formal grievance form. See id. Fourth, the grievance is investigated and the Investigating Grievance Officer provides a written determination within five business days of receiving the complaint. See id. Fifth, the inmate may appeal to the Jail Administrator or his or her designee within two business days of receiving the Grievance Officer's decision. See id. Sixth, the Jail Administrator responds within five business days. See id. Seventh, the inmate may appeal to the State Commission of Corrections, which responds within forty-five days. See id.

"Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may

a prisoner seek relief pursuant to section 1983 in a federal court." Murray v.

Goord, 668 F. Supp. 2d 344, 355-56 (N.D.N.Y. 2009).  On a motion for summary

judgment, "[t]he defendant bears the burden of proving that the administrative

remedies available to the plaintiff were not exhausted prior to the initiation of a

civil action." McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL

8894737, at *2 (N.D.N.Y. Dec. 18, 2017), report and recommendation adopted,

No. 9:16-CV-277 (MAD/DJS), 2018 WL 879270 (N.D.N.Y. Feb. 14, 2018).

Here, defendants have failed to meet their burden of establishing that no

genuine issue of material fact exists concerning exhaustion of plaintiff's

administrative remedies.  LaCotta's affidavit establishes only that CCCF has no

record of plaintiff filing a grievance between June 1, 2018, and September 30,

2018, "relating to any claims asserted in his [c]omplaint, Demuth v. Hand, []No.

9:18-[CV]-0769."  Dkt. No. 32-5 at 2 ¶ 6.  However, that case involves only a First

Amendment claim based on the alleged denial of notary services and does not

raise the same or similar allegations as plaintiff asserts in the present matter.

See Demuth v. Hand, 9:18-CV-0769 (LEK/TWD), 2018 WL 5253097, at *2-3

(N.D.N.Y. Oct. 22, 2018).  Consequently, LaCotta's affidavit demonstrates only

that plaintiff did not file grievances "relating to" his First Amendment claims in a

different action but does not establish whether CCCF records contain a

grievance relating to the claims in the present matter.  Dkt. No. 32-5 at 2 ¶ 6.

Further, contrary to defendants' assertion, plaintiff did not testify at his deposition

that he "did not file any grievances with respect to the matters raised in the

18

[c]omplaint." Dkt. No. 32-13 at 12.  Rather, plaintiff stated equivocally that he "d[id]n't believe [he] did" and that he was "not sure" because "at the time that [he] filed a lot of [his] cases, [he] filed numerous grievances" and he was "not sure which ones were actually sent out or taken care of or done or whatever." Dkt. No. 32-4 at 7, 8.  Thus, it is recommended that defendants' motion be denied insofar as it seeks dismissal of plaintiff's complaint for failure to exhaust administrative remedies.  However, for the reasons that follow, dismissal is recommended on the merits of plaintiff's claims.

### D. Right to Counsel and Access to the Court

Plaintiff's complaint does not specify the nature of the purported conversations he had with his attorney.  See Compl. at 1-2.  If he was communicating with his attorney to prepare a defense to his criminal prosecution, his Sixth Amendment right to counsel would be implicated.  See Benjamin v. Fraser, 264 F.3d 175, 186 (2d Cir. 2001) (observing that the Sixth Amendment right to counsel is triggered when prisoners are "defend[ing] against the charges brought against them.").  On the other hand, if he was communicating with an attorney concerning another matter, such as to challenge the conditions of his confinement, his right of access to the courts would be implicated.  See id. Regardless of which right is implicated, however, defendants are entitled to summary judgment.

19

### 1. Right to Counsel

"[P]retrial detainees need access to the courts and counsel . . . to defend against the charges brought against them." Benjamin, 264 F.3d at 186 (citation omitted).  Accordingly, the Second Circuit has determined that a pretrial detainee's Sixth Amendment rights are infringed upon when prison regulations "unjustifiably obstruct," "infringe[]," "unreasonably burden[]," or "significantly interfere[]" with the detainee's access to counsel. Id. at 187 (internal quotation marks and citations omitted); see Alster v. Goord, 745 F. Supp. 2d 317, 341 (S.D.N.Y. 2010) ("prison regulations restricting pretrial detainees' contact with their attorneys violate the Sixth Amendment where they unreasonably burden[] the inmate's opportunity to consult with his attorney and to prepare his defense.") (internal quotation marks, italics, and citation omitted)).  "A [pretrial detainee] asserting a violation of the Sixth Amendment [right to counsel] need not allege that he suffered 'actual injury' as a result of this interference." Groenow v. Williams, No. 13-CV-3961 (PAC/JLC), 2014 WL 941276, at *6 (S.D.N.Y. Mar. 11, 2014) (quoting Benjamin, 264 F.3d at 185).

Courts in this Circuit have held that forcing pretrial detainees to consult with counsel in non-private areas where their conversations may be overheard by correctional staff or other inmates is violative of the pretrial detainees' Sixth Amendment right to counsel.  For instance, in Grubbs v. Safir, No. 92-CV-2132 (DC), 1999 WL 20855 (S.D.N.Y. Jan. 15, 1999), pre-trial detainees brought a class action lawsuit alleging that the Richmond County criminal courthouse

lacked a space for "private attorney-client consultations prior to court appearances," in violation of their Sixth Amendment rights. Id. at *3. The court agreed with the plaintiffs, holding that pre-arraignment consultations with attorneys must be private because "speaking to one's attorney in the presence of other detainees as well as court officers (who are also in the vicinity)" was not "sufficient for every detainee," and reasoning "[t]he assistance of counsel would be rendered meaningless if that counsel's client were to be inhibited from speaking openly and freely." Id. at *7. Recently, in J.B. v. Onondaga Cty., 401 F. Supp. 3d 320 (N.D.N.Y. 2019), in granting a class of pretrial detainees' motion for a preliminary injunction, this Court held that the County of Onondaga's policy of "posting officers in [c]ourthouse attorney-client meetings . . . place[d] a substantial obstacle in the way of [pre-trial detainees'] right to consult their attorneys and prepare a defense" in violation of the Sixth Amendment. Id. at 340 (citing Benjamin, 264 F.3d at 187).

Here, defendants have established through admissible evidence in the form of CCCF records that plaintiff did not have his first attorney-client meeting until July 12, 2018—six days after his complaint was filed on July 6, 2018, and never requested or engaged in mutual inmate legal assistance. See Dkt. No. 32-11 at 2; Compl. at 1.[11] As discussed above, plaintiff did not respond to

---

[11] Plaintiff's deposition testimony indicates that he engaged in an attorney-client meeting in "March." Dkt. No. 32-4 at 7. However, plaintiff was not confined at CCCF until April 2018; therefore, that meeting could not have occurred until March 2019—after plaintiff filed his complaint in July 2018—and plaintiff did not amend his complaint. See Compl. at 1. In any event, the record lacks any facts concerning the alleged March meeting.

defendants' motion and, therefore, made no attempt to refute this evidence.  See subsection II. B., supra.  Plaintiff's conclusory statement—that on one unspecified date in June 2018, he met with an attorney in the non-contact room while another inmate was present and that he and the other inmate overheard each other's conversations with the attorney, see Dkt. No. 32-4 at 5—is insufficient to defeat defendants' properly-supported motion for summary judgment.  See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983) ("[M]ere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case.") (internal quotation marks and citation omitted), overruled on other grounds; see also Zembko v. Northwestern Mut. Life Ins. Co., No. 3:05-CV-918 (AHN), 2007 WL 948323, at *4 n.1 (D. Conn. Mar. 26, 2007) ("[A] nonmovant's self-serving conclusory statements that dispute the movant's evidence cannot create material issues of fact to avoid summary judgment." (internal quotation marks and citation omitted)).  In any event, defendants' documentary evidence establishes, and plaintiff's deposition testimony corroborates—in direct contradiction to the allegations in plaintiff's complaint—that the standard practice at CCCF is to conduct attorney-client meetings in the parole hearing (conference) room with a correction officer stationed outside.  See Dkt. No. 32-9 at 2 ¶ 9; Dkt. No. 32-4 at 6-7; Comp. at 1.  Plaintiff does not allege that attorney-client interviews conducted in such a manner are subject to being overheard by correctional staff

or other inmates.  See Compl. at 1-2.  Consequently, it is recommended that plaintiff's Sixth Amendment right to counsel claim be dismissed.

### 2. Access to the Courts

"Prisoners, including pretrial detainees, have a constitutional right of access to the courts." Bourdon v. Loughren, 386 F.3d 88, 92 (2d Cir. 2004) (internal quotation marks and citations omitted); see Washington v. James, 782 F.2d 1134, 1138 (2d Cir.1986) ("A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure.").  This right of access, however, guarantees a prisoner "no more than reasonable access to the courts." Herrera v. Scully, 815 F. Supp. 713, 725 (S.D.N.Y. 1993) (internal quotation marks and citation omitted).  To establish a claim for denial of access to the courts, a plaintiff must prove that he suffered an "actual injury." Benjamin, 264 F.3d at 185 (quoting Lewis, 518 U.S. at 351); see Young v. Tryon, No. 12-CV-6251 (CJS/MWP), 2015 WL 309431, at *7 (W.D.N.Y. Jan. 23, 2015) ("[I]in order to violate an inmate's right of access to the courts, a defendant's conduct must cause the inmate actual injury, in that a legal action that he sought to pursue must have been materially prejudiced by the defendant's actions." (internal quotation marks and citations omitted)), report and recommendation adopted, No. 12-CV-6251 (CJS/MWP), 2015 WL 554807 (W.D.N.Y. Feb. 11, 2015).

23

Here, as defendants argue, plaintiff has neither alleged nor established that he suffered any actual injury as a result of the alleged policy. See Dkt. No. 32-13 at 28.  The complaint lacks allegations that any legal action plaintiff "sought to pursue [was] materially prejudiced by" the purported CCCF policy of conducting attorney-client interviews in the non-contact room. Young, 2015 WL 309431, at *7; see Johnson v. Schiff, No. 9:11-CV-0531 (MAD/TWD), 2013 WL 5466218, at *18 (N.D.N.Y. Sept. 13, 2013) (dismissing a pretrial detainee's right of access to courts claim where he "alleged no actual injury" as a result of the defendants' purported actions of cutting short a conversation between him and his attorney), report and recommendation adopted, No. 9:11-CV-00531 (MAD/TWD), 2013 WL 5466638 (N.D.N.Y. Sept. 30, 2013), and No. 9:11-CV-00531 (MAD/TWD), 2013 WL 6528860 (N.D.N.Y. Dec. 12, 2013).  Indeed, plaintiff explicitly testified "[n]o" in response to defense counsel's inquiry whether "any of [his] conversations that [he] claim[s] may have been overheard resulted in any negative impact on [him]" and, when asked whether there were "[a]ny other areas where [plaintiff] may have been . . . injured," plaintiff stated "[n]o[, j]ust the fact that somebody was overhearing the conversation," "someone overhearing my case matters."  Dkt No. 32-4 at 5, 8, 9.  Accordingly, to the extent the complaint can be read as raising a right of access to the courts claim, it is recommended that such claim be dismissed.

### E. Fourth Amendment

24

**1. Reasonable Expectation of Privacy**

The Fourth Amendment protects "'against unreasonable searches and seizures,' including the monitoring of oral statements." Goode v. Faraci, No. 3:17-CV-478 (AVC), 2018 WL 10158673, at *3 (D. Conn. Oct. 10, 2018) (quoting Katz v. United States, 389 U.S. 347, 353 (1967)). "Its protection has long been understood to require the government to obtain a warrant before eavesdropping on a suspect's words or conversations, but to apply only if a suspect has a reasonable expectation of privacy in not having his words or conversation overheard." United States v. Colon, 59 F. Supp.3d 462, 465 (D. Conn. 2014). Thus, a court examining a Fourth Amendment claim must decide (1) whether the claimant had an actual or subjective expectation of privacy, and (2) whether that expectation is one that society recognizes as reasonable. See Katz, 389 U.S. at 361. If those conditions are satisfied, then the court must determine whether the search or seizure at issue was reasonable. See id.

Here, as addressed above, see subsection II. D., supra, defendants have established through CCCF records that plaintiff did not engage in an attorney-client meeting until July 12, 2018—six days after he filed his Complaint—and did not engage in any inmate mutual legal assistance meetings. Dkt. No. 32-13 at 22-23. Therefore, as defendants aver, "[p]laintiff did not have an actual, subjective expectation of privacy in confidential communications with his attorney or with other inmates when no such communications occurred." Dkt. No. 32-13 at 22-23. Plaintiff's self-serving and conclusory deposition testimony that he had

25

an attorney-client meeting in the non-contact room in the presence of another inmate sometime before the filing of his complaint is belied by defendants' documentary evidence and fails to raise a genuine issue of material fact.  See Flaherty, 713 F.2d at 13; see also Zembko, 2007 WL 948323, at *4 n.1. Accordingly, it is recommended that plaintiff's Fourth Amendment claim be dismissed.  Because dismissal is recommended for the foregoing reasons, the undersigned declines to reach defendants' remaining arguments regarding qualified immunity and lack of personal involvement.

### III. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 32) be **GRANTED** in its **ENTIRETY** and plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** in its **ENTIRETY WITH PREJUDICE** as abandoned or, in the alternative, for failure to establish a constitutional violation, and it is further

**ORDERED**, that that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE**

**APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing

Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[12]

Dated: January 24, 2020
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[12] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).